UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
UNITED STATES OF AMERICA,      )
                               )
         v.                    )    CRIMINAL ACTION
                               )    NO. 04-1831-CBS
SAMUEL J. LEWIS,               )
a/k/a Shaheed Lewis,           )
         Defendant,            )
_____)
```

**MEMORANDUM OF PROBABLE CAUSE AND ORDER**
**ON THE GOVERNMENT'S MOTION FOR DETENTION**
**December 8, 2004**

**SWARTWOOD, M.J.**

   I.   Nature Of The Offense And The Government's Motion

   On November 15, 2004, a Criminal Complaint was filed charging Samuel J. Lewis, a/k/a Shaheed Lewis ("Mr. Lewis"), with acquisition of firearms (H&K, Model USP Compact, .45 ACP caliber pistol, bearing serial # 29-006531 (H&K pistol); Bushmaster, Model XM-15, .223 caliber rifle, bearing serial # BF1402246 (Bushmaster rifle); Mossberg, Model 51683, short barreled 12 gauge shotgun bearing serial # P997733 (Mossberg shotgun) from licensed dealers, knowingly making false and fictitious written statements, which statements were likely to deceive the dealers as to a fact material to the lawfulness of such firearm sales; and in connection with the acquisition of a Mossberg shotgun, knowingly making and knowingly causing the making of a false entry on an ATF Form 4 application in violation of provisions of the National Firearms Act, knowing such

entry to be false, in violation of 18 U.S.C. §§ 922(a)(6) and 26 U.S.C. §5861(l).

On November 23, 2004, Mr. Lewis appeared for his initial appearance in connection with this Complaint and at that time, he was advised of his right to a preliminary hearing in accordance with Fed. R. Crim. P. 5.1 and the Government moved for a detention hearing in accordance with 18 U.S.C. §3142(f)(2)(A)(risk of flight). The matter was then continued to November 30, 2004 and again continued, at Mr. Lewis' request, to December 3, 2004. On December 3 and 6, 2004, a probable cause/detention hearing was held and at that hearing, Michael P. Curren, Special Agent, with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") testified on behalf of the Government and was cross-examined by Mr. Lewis' counsel.

## II.  Findings of Fact

1. On August 9, 2002, Mr. Lewis purchased an H&K pistol from Sparky's Gun Shop, in Webster, Massachusetts. In order to purchase the H&K pistol, Mr. Lewis was required and did complete an ATF Form in which, under oath, he stated that he was the actual buyer of the H&K pistol. Govt. Ex. 2.

2. On January 21, 2003, Mr. Lewis purchased a Bushmaster rifle from Sparky's Gun Shop, in Webster, Massachusetts. In order to purchase the Bushmaster rifle, Mr. Lewis was required and did complete an ATF Form in which, under oath, he stated that he was

the actual buyer of the Bushmaster rifle.  <u>Govt. Ex. 3</u>.

   3.   On June 11, 2002, Clarence E. Floyd ("Mr. Floyd") completed an Application For Tax Paid Transfer And Registration Of Firearm in connection with his sale of a Mossberg, short barreled, shotgun to Mr. Lewis who listed his address as 59 Evelyn Street, Worcester, Massachusetts.  On November 19, 2002, that transaction was approved by the Chief of Police for the City of Worcester and on April 9, 2003, that transaction was approved by ATF.  <u>Govt. Ex. 4</u>.

   4.   On May 13, 2003, Mr. Lewis filled out and signed an ATF Form to complete the transaction for his purchase of the Mossberg shotgun from Mr. Floyd.  In completing this form, Mr. Lewis listed his address at 59 Evelyn Street, Worcester, Massachusetts.  <u>Govt. Ex. 5</u>.

   5.   Mr. Lewis is a gun collector and between 2001 and 2003 he purchased a total of 27 firearms.  Special Agent Curren testified that Mr. Lewis not only purchases, but sells firearms.

   6.   ATF commenced its investigation of Mr. Lewis in September 2003 and first contacted Mr. Lewis at that time.  In early 2004, ATF executed a search warrant at Mr. Lewis' residence.

   7.   On March 11, 2004, Special Agent Curren interviewed Mr. Lewis' former wife, Angela Mangrum ("Ms. Mangrum") and during that interview, she described her life with Mr. Lewis from the time they were married in 1996 until they were divorced in 1998, and her subsequent contact with Mr. Lewis following their divorce,

including his support of and visitation with their children. During Ms. Mangrum's interview, she stated that Clarence Plant was a friend of Mr. Lewis.  Govt. Ex. 6.

    8.   Sometime in the middle of 2003, Mr. Plant obtained a license to carry and own firearms.  On January 20, 2004, as a result of a search warrant being executed at Mr. Plant's residence, ATF agents retrieved the Bushmaster rifle which Mr. Lewis had purchased on January 21, 2003.  Subsequently, as a result of another search of Mr. Plant's residence on January 24, 2004, ATF agents retrieved from that residence the H&K pistol which Mr. Lewis had purchased on August 9, 2002.

    9.   On January 21, 2004, following execution of the search warrant at Mr. Plant's residence and the seizing of the Bushmaster rifle at that residence, Mr. Plant was interviewed by Special Agent Curren.  Mr. Plant told Special Agent Curren that in approximately August 2002, Mr. Lewis approached Mr. Plant about purchasing firearms for Mr. Plant.  Additionally, Mr. Lewis told Mr. Plant that because Mr. Lewis had a license to carry firearms in Massachusetts and Mr. Plant did not, Mr. Lewis could purchase firearms at gun shops for Mr. Plant so that Mr. Lewis and Mr. Plant would have firearms to shoot when they went to the shooting range together.

    10.   Mr. Plant told Special Agent Curren that on August 9, 2002, he gave money to Mr. Lewis so that Mr. Lewis could purchase the H&K pistol.  Mr. Plant watched Mr. Lewis fill out the proper

ATF Forms for the purchase of the H&K pistol and observed Mr. Lewis pay the gun dealer for the pistol using the cash that had been given to Mr. Lewis by Mr. Plant. Mr. Plant further stated that Mr. Lewis offered to purchase for Mr. Plant a Bushmaster rifle and that Mr. Plant gave Mr. Lewis cash towards the purchase of this rifle on multiple occasions. Mr. Lewis, in turn, made payments to Sparky's Gun Shop for the purchase of the Bushmaster rifle. On January 21, 2003, Mr. Plant went with Mr. Lewis to Sparky's Gun Shop where Mr. Plant stated that Mr. Lewis purchased the Bushmaster rifle for $800 which had previously been given to Mr. Lewis by Mr. Plant for that purpose. Mr. Plant was present when Mr. Lewis completed the required ATF Form for the purchase of the Bushmaster rifle and was present when the Bushmaster rifle was given to Mr. Lewis by Sparky's Gun Shop. Mr. Lewis further stated that the H&K pistol and Bushmaster rifle were kept at Mr. Lewis' residence at 236 Constitutional Avenue (Great Brook Valley Apartments), in Worcester, until they were transferred to Mr. Plant sometime after Mr. Plant had obtained a proper license to carry and own firearms in the middle of 2003. This transfer occurred and was properly documented in October 2003, shortly after ATF agents first contacted Mr. Lewis in connection with this investigation.

11. Mr. Lewis' mother resides at 59 Evelyn Street, in Worcester, which is an elderly housing project. When Mr. Lewis purchased the Mossberg short barreled shotgun, he used his mother's address as his address. Mr. Lewis signed the application to

purchase the Mossberg on November 14, 2002 and the transfer of the Mossberg was finally approved by ATF on April 9, 2003. Mr. Lewis then purchased the Mossberg on May 13, 2003. Govt. Exs. 4 and 5. On January 2, 2002, Mr. Lewis' mother made application to the Housing Authority for Mr. Lewis and his family to stay at her apartment as a guest for two weeks. Govt. Ex. 11. Subsequently, in March 2002, Mr. Lewis' mother received a letter from the Housing Authority informing her that Mr. Lewis had overstayed his authorized visit and that he should leave her apartment. Govt. Ex. 11A. Mr. Lewis left that apartment as directed. Mr. Lewis' former wife, Ms. Mangrum, stated that Mr. Lewis will sometimes use his mother's address as his residence, but that he does not live with his mother.

## II.   Probable Cause

Based on Mr. Plant's testimony that he gave money to Mr. Lewis prior to Mr. Lewis' purchase of the H&K pistol and the Bushmaster rifle and based further on Mr. Plant's statement that Mr. Lewis stated to Mr. Plant that the H&K pistol and Bushmaster rifle belonged to Mr. Plant upon purchase and the fact that Mr. Plant was in possession of both firearms in January of 2004, I find that there is probable cause that Mr. Lewis made a false statement, under oath, on an AFT Form in purchasing both firearms. Additionally, I find probable cause that Mr. Lewis did not live at his mother's residence when he used that residence as his residence when he purchased the Mossberg short barreled shotgun. Therefore,

I find probable cause for the offenses charged against Mr. Lewis in this Complaint.

## IV.   Discussion of the Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, the Defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a).  Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e).   The Supreme Court, in United States v. Salerno, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." Id. at 755, 107 S.Ct. at 2105. For this reason,  the Defendant may be detained only if the judicial officer finds by (1) clear and convincing evidence, that the Defendant is a danger to the community, or (2) a preponderance of the evidence, that the Defendant poses a risk of flight.  See 18 U.S.C. § 3142 (f); United States v. Jackson, 823 F.2d 4-5 (2d Cir.

1987); United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. (1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986).  See also United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991).  Furthermore, the judicial officer "may not impose financial condition that results in the pretrial detention of the person".  18 U.S.C. § 3142 (c).

The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted.  See 18 U.S.C. § 3142 (f)(1).  The Government may also move for detention, or the judicial officer may on his or her own motion move for detention, where the case involves a serious risk that the Defendant will flee or that the Defendant will obstruct or attempt to obstruct justice.  18 U.S.C. § 3142(f)(2). Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of the Defendant and the safety of the community against any danger posed by the Defendant's pretrial release.  See United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988).

In meeting its burden on the issue of whether any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community, the Government is aided by the statutory presumptions

created by 18 U.S.C. 3142(e). Where the offense charged is one of the offenses enumerated in Section 3142(f)(1), Section 3142(e) creates the rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the Defendant has been convicted of a federal offense that is described in Section 3142(f) or an offense under state law that would have been an offense described in Section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on release pending trial for a federal, state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense. Section 3142(e) also creates the rebuttable presumption that no condition or combination of conditions will ensure the safety of the community and the appearance of the Defendant if the judicial officer finds that there is probable cause to believe that the Defendant committed an offense: (1) for which a maximum term of imprisonment of ten years or more is prescribed (a) in the Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c). In order to rebut either presumption, the Defendant must produce "some evidence" to the contrary. United States v. Jessup, 752 F.2d 378, 384 (1st Cir. 1985).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of

the [Defendant] as required and the safety of any other person and of the community", the judicial officer is compelled to consider the following factors:

1. the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

2. the weight of the evidence against the person;

3. the history and characteristics of the person, including:

   (a) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   (b) whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

4. the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

### IV. Discussion of Whether Detention is Warranted

#### A. Mr. Lewis' History and Characteristics

Mr. Lewis was born in Worcester, Massachusetts on April 18, 1973 and has continued to live in Worcester his entire life.

Mr. Lewis' father resides in New Jersey, but Mr. Lewis has had no contact with his father. Mr. Lewis' mother resides at 59 Evelyn Street, Worcester, Massachusetts. Mr. Lewis has two brothers who both live in Worcester County.

Mr. Lewis was married to Ms. Mangrum from 1996 to 1998. They have two children, ages thirteen and seven. In September 2002, Mr. Lewis married Pamela Cortez and they have three children, ages seven, four and seven months.

Mr. Lewis graduated from Clark University in 2003 and is currently enrolled at Quinsigamond Community College taking pre-requisite courses for a post-graduate degree at the University of Massachusetts.

Mr. Lewis reports that he has traveled to Somalia, Saudi Arabia and London in the past. Mr. Lewis had previously been issued a passport, but in April 2001, he reported that he had lost that passport and a new passport was issued to him. U. S. Customs has a record of Mr. Lewis' travel outside of the United States in August 2001.

A confidential informant ("CI") first stated that Mr. Lewis and his wife resided at a particular address in a specific apartment on Belmont Hill, in Worcester. That information proved to be inaccurate as Mr. Lewis, his wife and their children, reside at another address much lower on Belmont Hill, on the opposite side of the street. This same confidential informant stated that Mr. Lewis had planned to leave the United States on December 21, 2004 to take up residency in another country. Subsequently, that confidential informant stated that Mr. Lewis was planning to leave the United States sometime after January 1, 2005, so that he could spend New Years with his family.

Mr. Lewis' former wife had stated to Special Agent Curren on December 2, 2004, that she was "concerned for her safety if Lewis' is released from custody, and is also concerned about Lewis taking their children out of the United States". <u>Govt. Ex. 10</u>.  However, on a prior occasion, when interviewed by Special Agent Curren on March 11, 2004, Ms. Mangrum stated that she did not think that Mr. Lewis would ever hurt any innocent people.  <u>Govt. Ex. 6</u>.

Mr. Lewis has no criminal record.

    B. <u>Nature of the Offense; Weight of the Evidence; Government's Burden; and Risk of Flight</u>

        1.  <u>Nature of the Offense</u>

If Mr. Lewis is found guilty of the offenses charged in this Complaint, he faces a maximum penalty of ten years incarceration, but a more realistic period of incarceration of from 27 to 33 months.

## 2. Weight of the Evidence

Bearing in mind that Mr. Lewis is presumed innocent, the Court must nevertheless consider the weight of the evidence against him. Although I have previously found probable cause for the offenses charged in this Complaint, the evidence upon which I have found probable cause is not overwhelming. Probable cause that Mr. Lewis was not the actual purchaser of the H&K pistol and the Bushmaster rifle is based solely on Mr. Plant's testimony that he gave money to Mr. Lewis to purchase the firearms for him and that at the time those firearms were purchased, they belong to Mr. Plant. However, there is credible evidence that Mr. Lewis did not transfer those firearms to Mr. Plant until after Mr. Plant had himself obtained a license to own and carry a firearm. There is also credible evidence that Mr. Plant withdrew funds from his bank account contemporaneously with Mr. Lewis making an installment payment for the firearm. With respect to the second charge, that Mr. Lewis used a false address to obtain the Mossberg short barreled shotgun, the evidence was clear that for at least a time prior to this purchase, Mr. Lewis was staying at his mother's apartment at 59 Evelyn Street. However, at the time that the Mossberg shotgun was purchased, it appears that Mr. Lewis was not staying at his mother's apartment. Therefore, there is certainly a technical violation of the statute.

3. <u>Government's Burden</u>

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(2)(A). The Government must prove that there is no condition or combination of conditions that would reasonably assure the appearance of Mr. Lewis as required.

The Government's burden of proof is by a *preponderance of the evidence* that Mr. Lewis, if released, would not appear as required.

4. <u>Whether Mr. Lewis Poses A Danger to the Community</u>

Mr. Lewis is a lifelong resident of Worcester, where his mother, with whom he maintains contact and with whom he has recently lived, his brothers, his wife and all five of his children reside. Mr. Lewis has admitted to some foreign travel to countries which have large Muslim populations. Mr. Lewis is a Muslim and it is not surprising that he would visit countries which have large populations which embrace his faith. Information provided to ATF by the CI has proved to be questionable and based on double hearsay. Therefore, I do not give credence to the CI's report that Mr. Lewis is planning to leave the United States in the near future. Additionally, Mr. Lewis was aware, as early as September 2003, that he was under investigation by ATF. In early 2004, ATF executed a search warrant at Mr. Lewis' residence. Nonetheless, Mr. Lewis has made no attempt to flee the jurisdiction. Furthermore, Mr. Lewis has a triable case and even if he is found guilty, faces only about two plus years incarceration. Under the

circumstances, I cannot find that Mr. Lewis poses a risk of flight and I am releasing Mr. Lewis on special conditions, which I find will assure his appearance in this Court as directed.

                                         <u>/s/Chales B. Swartwood, III</u>
                                         CHARLES B. SWARTWOOD, III
                                         MAGISTRATE JUDGE