UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )<br>)<br>Samuel J. Lewis )<br>a/k/a Shaheed Lewis )<br>)<br>Defendant. )<br>) | CRIMINAL NO. 05-40001-FDS |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE REFERENCES TO DEFENDANT'S LIMITED FINANCIAL MEANS**

The United States of America, by Michael J. Sullivan, United States Attorney, and B. Stephanie Siegmann, Assistant United States Attorney for the District of Massachusetts, hereby opposes the defendant's motion *in limine* to preclude the government from eliciting testimony, introducing evidence during its closing any inference concerning defendant's financial situation from August 2002 through September 2003, the time period during which the firearm transactions at issue occurred. The defense claims that testimony regarding the defendant's limited financial means evidenced by his inability to make child support payments, among other things, and the aggregate cost of the firearms obtained as a result of the falsified ATF Forms 4473 is irrelevant and should be excluded. To the contrary, the defendant's financial situation, including his living arrangements in a homeless shelter and later free housing provided by the Worcester Housing Authority's Transitional Assistance Program when the firearms at

1

issue were purchased, provided the defendant with the motive to lie on the ATF Forms 4473. Possession of any firearms was prohibited by the rules of the homeless shelter.

Despite defendant's claims to the contrary, the aggregate cost of the firearms is in excess of $2,000. These purchases were concealed from the Worcester Housing Authority to ensure that the defendant and his family would retain their free housing and other financial benefits (i.e., tuition assistance). Additionally, testimony regarding defendant's lack of financial resources will corroborate Clarence Plant's ("Plant") testimony that he was in fact the actual purchaser of two of the sixteen firearms. Plant will testimony that he gave the defendant cash to purchase a H&K pistol in August 2002 and a Bushmaster rifle in January 2003. The Bushmaster rifle alone cost $820 and was purchased by Lewis approximately one month after he was laid off from his job.

The defendant's financial means will be an central issue in this case because one of the elements the government must prove at trial is that the defendant prove the defendant knowingly made false statements on 16 ATF Forms 4473. The government contends the defendant lied on 15 separate ATF Forms 4473 when he used false addresses (a prior house he had rented and from which he was evicted in January 2002 and his mother's address at elderly and disabled housing development). Accordingly, the government

must prove where the defendant was actually living at the time the defendant purchased the 16 firearms at issue. The locations at which the defendant was actually living are therefore clearly relevant and admissible.

The evidence will show that at the time the defendant committed the alleged offenses he was living at a homeless shelter (July 2002-October 2002) and later in free housing provided by the Worcester Housing Authority's ("WHA") Transitional Housing Program (October 2002-2003). In order to retain free housing in these two programs, the defendant was required to meet certain criteria and abide by certain rules. The homeless shelter operated by Catholic Charities, where the defendant lived when he purchased two of the firearms, prohibited the possession and storage of firearms at its premises (the Best Western Suites in Worcester). The defendant twice signed a participation agreement that contained this prohibition.

Similarly, WHA's Transitional Housing Program required that participants meet budgetary requirements. The program was designed to give families free housing only as long as required to allow the family to become financially stable. The defendant and his wife were also required to discuss their budget and living expenses with case workers for the program to ensure the family was saving money and paying any debts that resulted in their homelessness. At no time did the defendant disclose his

firearm purchases to anyone at the Transitional Housing Program. Thus, the government believes that these restrictions provided the defendant with the motive to lie on the ATF Forms 4473. If someone at WHA's Transitional Housing Program learned of the defendant's multiple firearm purchases, the aggregate cost of which was $2,000, the defendant and his family would risk losing their free housing.

Evidence about where the defendant was living (including, circumstances surrounding how those living arrangements were obtained, rules and regulations governing those living arrangements, and financial benefits provided to the defendant at these living arrangements) during the firearm transactions at issue is clearly admissible as evidence intrinsic to the crimes and therefore, not governed by Rule 404(b). See United States v. Manning, 79 F.3d 212, 218 (1st Cir. 1996)(evidence intrinsic to the crimes for which defendant is on trial is not governed by Fed. R. Evid. 404(b)); United States v. Santagata, 924 F.2d 391, 394 (1st Cir. 1991)(documents reflecting telephone orders were relevant to the existence of charged wire fraud scheme and independently admissible without application of Rule 404(b)).

Rule 404(b) allows "[e]vidence of other crimes, wrongs, or acts" to be introduced for a non-propensity purpose such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." This

rule is permissive in nature and its sole purpose "is to provide an exception to the common law rule barring evidence of prior bad acts." United States v. DeCicco, 370 F.3d 206, 214 (1st Cir. 2004).

The First Circuit Court of Appeals has adopted a two-part test to determine admissibility of evidence offered under Rule 404(b). United States v. Aquilar-Aranceta, 58 F.3d 796, 798 (1st Cir. 1995). First, the proffered evidence must have some "special relevance" or "special" probative value independent of its tendency to show the defendant's bad character or criminal propensity. United States v. Frankhauser, 80 F.3d 641, 648 (1st Cir. 1996). Second, the probative value of the proffered evidence is not substantially outweighed by the danger of unfair prejudice. Frankhauser, 80 F.3d at 648.

The First Circuit "has held that when evidence goes to show motive, the relevancy hurdle is particularly low." United States v. McMahon, 938 F.2d 1501, 1508 (1st Cir. 1991). Indeed, the First Circuit has ruled admissible similar types of evidence of motive as that the government seeks to admit in this case. See, e.g., United States v. Sebbagala, 256 F.2d 59, 67-68 (upholding introduction of "mass of [stolen and altered] travelers' checks" on ground that such evidence was "probative of motive on false statement counts; their existence furnished a cogent reason for the appellant to lie to the customs inspectors about the value of

5

the monetary instruments in his possession"); McMahon, 938 F.2d at 1507-08 (upholding admission of evidence of defendant's financial difficulties in extortion case because it "clearly tended to make it more likely that he would have sought money from an illegal venture."). For instance, in DeCicco, the First Circuit held that it was error to exclude testimony about the defendant's financial condition. 370 F.3d at 213-14. In that case, the defendant was charged with transmitting false and fraudulent insurance claims for building loss proceeds and setting fire to his warehouse. The government sought to admit testimony from the defendant's accountant regarding DeCicco's tax liabilities at the time of fire. Id. at 213. The Court concluded that this testimony was "especially relevant . . . because it tends to establish the motive for the alleged mail fraud and arson." Id. at 214.

   The proffered evidence of the defendant's financial condition and the aggregate cost of the firearms should similarly be ruled admissible. It easily passes the relevancy hurdle. The defendant's financial condition and the requirements imposed upon him by the homeless shelter and WHA establishes a motive for the defendant's alleged fraud. Additionally, the aggregate cost of the firearms coupled with the defendant's frequent failure to pay child support provided the defendant with an incentive to conceal his firearm purchases from the WHA and his ex-wife. He did this

6

by using a false address on the ATF Forms. Furthermore, this evidence is highly probative and not substantially outweighed by unfair prejudice. Unlike references to the Oklahoma City bombing (see Def. Mot. at 2) or similarly emotionally charged terrorist incident, there is little risk that testimony regarding the defendant's financial condition and the cost of the firearms he fraudulently purchased will overwhelm the jurors' emotions or lead them to behave irrationally. Sebaggala, 256 F.3d at 68 (discussing Rule 403 analysis).

Moreover, the defendant's lack of financial resources in August 2002 and January 2003, when the government alleges he purchased two firearms for Plant but indicated on the respective ATF Forms 4473 that he was the actual purchaser will corroborate Plant's anticipated testimony. For instance, the records from WHA's Transitional Assistance Program establish that the defendant was laid off from his job in December 2002. Yet less than one month later he purchased an expensive gun from Sparky's Gun Shop. The defendant paid $819.00 in cash for the Bushmaster rifle, $619.00 of which was paid in December and January; Lewis made the first deposit on this firearm in October 2002. Plant will testify that he was the actual purchaser of this shotgun and gave the defendant the cash to buy it for him. Such testimony is therefore clearly relevant and highly probative. The First Circuit has concluded that evidence offered for corroborative

7

purposes is admissible under Rule 404(b).  See United States v. Figueroa, 976 F.2d 1446, 1454 (1st Cir. 1992) (although corroboration not one of the listed purposes enumerated in Rule 404(b), possession of welfare card, which provided direct corroboration of subject matter upon which critical government witness testified, ruled admissible).  Thus, this evidence should not be excluded.

Finally, the Court can minimize any potential danger of unfair prejudice caused by the admission of this evidence by issuing a limiting jury instruction regarding the proper relevance of the evidence.  The First Circuit has approved the use of such limiting instructions as an appropriate means of protecting a defendant against the possibility that a jury might draw improper conclusions from a defendant's prior bad acts.  See, e.g., United States v. Candelaria-Silva, 162 F.3d 689, 706 (1st Cir. 1998) (finding danger of unfair prejudice quelled by cautionary instructions); United States v. Garcia, 983 F.2d 1160, 1173 (1st Cir. 1993) ("district court handled the prior acts evidence with care, providing the jury with a limiting instruction . . . and again instructing the jury of the scope of prior acts evidence in his final charge.").

## CONCLUSION

For the foregoing reasons, the government respectfully requests this Court deny the defendant's motion in limine to

preclude the government from eliciting testimony, introducing evidence, or arguing during closing any inference concerning defendant's financial situation.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney

                      By: /s/ B. Stephanie Siegmann
                              B. STEPHANIE SIEGMANN
                              Assistant U.S. Attorney

### Certificate of Service

I do hereby certify that a copy of the foregoing opposition was served upon Mr. Timothy Watkins by electronic notice on this 10th day of July 2006.

                              /s/ B. Stephanie Siegmann
                              B. Stephanie Siegmann
                              Assistant U.S. Attorney