UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 05-40001-FDS |
| | ) | |
| Samuel J. Lewis | ) | |
| a/k/a Shaheed Lewis | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by Michael J. Sullivan, United States Attorney, and B. Stephanie Siegmann, Assistant United States Attorney for the District of Massachusetts, hereby submits this memorandum in support for its position that a sentence of 41 months imprisonment, which is in the low range of the sentencing guideline range for the defendant's total offense level of 22 (41-51 months), and three years supervised release is reasonable and warranted based upon all of the applicable sentencing considerations in this case. The government also submits that the defendant's three arguments for a sentence of time served (13 days imprisonment) and three years supervised release, are fundamentally flawed and patently unreasonable and therefore, should be rejected by this Court. First, using a strained analysis of the sentencing guidelines, the defendant erroneously argues that, contrary to probation's calculation of the defendant's total offense level under the Sentencing Guidelines at Level 22 (41-51 months imprisonment), his sentencing range for

1

the offenses is 0-6 months based largely on an inapplicable "sporting exception." Second, should the Court determine that the defendant's advisory guideline range is 41-51 months as calculated by probation, the defendant claims that a substantial departure of 16 levels is warranted because he was selectively prosecuted based on an alleged terrorism connection that the government has purportedly "abandoned"[1] and his conduct falls outside the "heartland" of misconduct covered the United States Sentencing Guideline ("U.S.S.G.") 2K2.1. Lastly, the defendant argues that the sentencing factors contained in 18 U.S.C. §3553(a) justify a sentence of 13 days imprisonment, 40 months below what the Sentencing Commission has deemed reasonable for similar conduct.

### INTRODUCTION

Although the defendant chooses to categorize his conduct as mere record keeping violations, as described in detail in the government's statement of offense conduct, this case is about the fraudulent acquisition of 16 firearms. The defendant was convicted of making false statements in connection with the

---

[1]Although the government has chosen not to seek a terrorism enhancement in this case, that decision should not be interpreted to mean that the government has retracted its position or belief that the defendant has espoused on multiple occasions, prior to being indicted, his desire to commit jihad and die while engaging in jihad and based upon evidence submitted to this Court in the government's pre-trial pleadings, that the defendant may be linked to potential violent, terrorist activities.

2

acquisition of 16 firearms on Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Forms 4473, including a short-barreled shotgun regulated under the National Firearms Act.

With respect to the purchase of 16 firearms between November 2002 and August 2003, the jury concluded that the defendant knowingly lied about his residential address in each transaction. Although not required to prove the defendant's motive in committing the offenses, at trial, the government presented evidence of why the defendant may likely have chose to conceal his actual address from the licensed firearms dealers. During each of the transactions, the defendant was living rent free in a homeless shelter operated by Catholic Charities' Homeward Bound Program and later at the Worcester Transitional Housing Authority. To obtain free housing and other benefits under these programs, the defendant was required to comply with certain rules. For instance, to obtain housing from Catholic Charities, the defendant was required to twice sign a contract[2] that prohibited the possession of firearms while enrolled in the Homeward Bound Program. Similarly, in order to obtain and maintain free housing privileges and other benefits at the

---

[2]On August 9, 2002, the date he signed the contract requesting to continue living at 50 Oriol Street, Worcester, for another sixty days, the defendant also completed and signed an ATF Form 4473 to purchase a H&K pistol. In direct contradiction to the Catholic Charities contract, on the ATF Form 4473, the defendant indicated he lived at 2 Fairlawn Drive, Worcester.

Worcester Transitional Housing Authority, the defendant was
required to attend budget meetings and demonstrate that the
family was saving money.  At these meetings, Director Laurie
Krushefsky testified that she asked the defendant about how he
was spending his income.  At no time, did he inform her that he
had spent in excess of $2600[3] on firearms from 2002-2003.  Even
on April 30, 2003, when the defendant requested tuition
assistance from Director Krushefsky for Clark University, he
concealed his firearm purchases from her.

The reason why the defendant concealed his actual address
from the licensed firearms dealers is clear -- he did not want to
jeopardize losing his housing and financial benefits.  Rather
than lose those benefits, the defendant engaged in a scheme to
conceal.  He did not lie once or twice but sixteen[4] separate
times to the ATF in addition to lies[5] he made to the Chief of

---

[3]Special Agent Curran testified that based upon his review
of the records from the defendants' firearms sales and trades
from August 2002-September 2003, that he spent in excess of $2600
out of pocket.

[4]As described in the government's statement of offense
conduct, the defendant lied on 15 ATF Forms 4473 and also lied on
an ATF Form 4, which he executed on November 14, 2002 under the
penalties of perjury, with regards to his purchase of the
Mossberg short-barreled shotgun regulated under the National
Firearms Act.  See Presentence Report at 5-6.

[5]Like the Forms 4473, the defendant falsely listed his
address as 59 Evelyn Street, Worcester, MA on his application to
renew his license to carry submitted to the Worcester Police
Department in November 2002.  His license was revoked for his
failure to maintain an accurate address with the police

4

Police of Worcester resulting in the revocation of his license to carry in October 2003.  The government also contends that in addition to lying about his address, in two of the transactions (the purchase of a H&K pistol on August 9, 2002 and the purchase of the Bushmaster rifle on January 21, 2003), the defendant also lied about being the actual purchaser of the firearms, when in fact he was purchasing them for Clarence Plant.[6]  A description of Plant's testimony at trial as to these transactions is provided in the Presentence Report ("PSR").  <u>See</u> PSR at 8-10.

During the course of the ATF investigation, the defendant was far from the cooperative and responsible gun owner portrayed in his sentencing memorandum.  Instead, after his license to carry firearms was revoked and he was notified that three of the 32 firearms he had purchased between November 2000 and October 2003 were missing, the defendant failed to account or provide any disposition records for these firearms.  As of this date, neither the ATF nor the Commonwealth of Massachusetts has been able to locate these firearms or determine who currently possesses them. Similarly, when ATF attempted to interview the defendant on September 26, 2003, he was evasive about where he lived and where

_____

department and the ATF investigation.

[6]The law has not changed post-*Booker*; acquitted conduct can be considered at sentencing and may even form the basis of a sentencing enhancement.  <u>United States v. Gobbi</u>,-- F.3d --, 2006 WL 3804388, *9 (1st Cir. 2006).

his firearms were stored.  <u>See</u> PSR at 6-7.  He even refused to present his NFA registration for the Mossberg to Special Agent Michael Curran, ATF, when requested.

These facts, as described in more detail in the Presentence Report and during the trial in this case, justify a sentence of 41 months imprisonment, which is within the low range of applicable sentencing guideline calculations.

The government objects to the defendant's statement of disputed facts.  As indicated above, the government contests the fact that the defendant completed and accurately completed the 15 ATF Forms 4473 at issue here.  Further, although the defendant possessed a valid license to carry firearms, he failed to comply with the rules and regulations for such a license as evidenced by the revocation of his license for failure to maintain an accurate address with the Worcester Chief of Police.  Lastly, while it may be true than the United States Attorney's Office for the District of Massachusetts has not utilized 18 U.S.C. §924(a)(1)(A) to prosecute false statements made on an ATF Form 4473 by a firearms purchaser, there is no prohibition from bringing such a charge.[7] Indeed, as the defendant conceded in his Motion to Dismiss, Section 924(a)(1)(A) is simply easier to prove as there is no

---

[7]This statute is frequently charged in other districts, including those in the Eleventh Circuit, against straw purchasers who purchase firearms for other individuals who are legally permitted to purchase firearms.  <u>See, e.g.</u>, <u>United States v. Opuku</u>, 2006 WL 3623692 (11th Cir. 2006).

requirement for the government to prove materiality.  Despite
defendant's representations to the contrary, the evidence
presented by the government at trial established that the
defendant's primary, if not his only, motivation to use a false
address on the ATF forms was an intention to deceive; he wanted
to hide his ownership of firearms from Catholic Charities and the
Worcester Housing Authority.

## I.    PROBATION PROPERLY CALCULATED SENTENCING GUIDELINES.

Probation properly determined that the base offense level
for the defendant's 15 violations of 18 U.S.C. §924(a)(1)(A) was
18 because one of the offenses involved a Mossberg short-barreled
shotgun described in 26 U.S.C. §5845(a).  U.S.S.G. §2K2.1(a)(5).
As required by the guidelines, because the offenses involved the
illegal acquisition of 15 firearms, the base offense level of 18
is to be increased by four levels to a total offense level of 22
(41-51 months imprisonment).  U.S.S.G. §2k2.1(b)(1)(B).

Despite the plain language contained in the Sentencing
Guidelines to the contrary, the defendant contends that the U.S.
Sentencing Commission intended that the base offense level of 6
would apply to the defendant's violations of 18 U.S.C.
§924(a)(1)(A).  This argument is flawed for three reasons.
First, the Sentencing Commission clearly intended guideline 2k2.1
to apply to violations of 18 U.S.C. §924(a)(1)(A).  Second, the
express provisions of 2K2.1(5) dictate that a base offense level

7

of 18 is required where the offense involved a firearm described in the National Firearms Act, 26 U.S.C. §5845.[8]  Third, where any of the offenses upon which the defendant stands convicted involve a National Firearms Act weapon, the base level of 6 under the lawful sporting purposes or collection exception, U.S.S.G. §2k2.1(b)(2), does not apply.

As with questions of statutory interpretation, when interpreting sentencing guidelines, courts are required to follow the clear unambiguous language of the guideline where there is no ambiguity and no contrary intention is manifested.  United States v. Luna-Diaz, 222 F.3d 1, 3 (1st Cir. 2000); see United States v. Dixon, 449 F.3d 194, 202 (1st Cir. 2006) (citations omitted) ("A court charged with the interpretation of a sentencing guideline should look first to the plain language of the guideline and, unless the Sentencing Commission has clearly indicated an intention to give a certain term a special or guideline-specific meaning, should apply that language as written, assigning commonly used words their ordinary meaning.").

Here, Appendix A, the Statutory Index, to the Sentencing

---

[8]Prior to 2006, this same guideline required an enhancement where one of the offenses involved a firearm described in 18 U.S.C. §921(a)(30)(semiautomatic assault weapons).  At the time of his indictment, the defendant's purchase of the Norinco assault rifle, one of the two firearms charged in Count 13, would have also required this enhancement, U.S.S.G. §2k2.1(5), to apply as the Norinco constituted a semiautomatic assault weapon.

Guidelines explicitly states that guideline 2k2.1[9] applies to violations of 18 U.S.C. §924(a). If the Sentencing Commission had intended violations of 18 U.S.C §924(a)(1)(A) to be governed by a different guideline, such as U.S.S.G. §2B1.1 (the guideline applicable to 18 U.S.C. §1001, false statements, which provides a base offense level of 6), or to have a base offense level of 6 in all cases, the Commission could have easily codified such language in the Guidelines but it did not. For instance, the Sentencing Commission chose to explicitly set a base offense level of 6 for violations of 18 U.S.C. §922(m), which criminalizes, among other things, the failure of licensed dealers to properly maintain records regarding the sales of firearms. See U.S.S.G. §2k2.1(a)(8).

Under guideline 2k2.1, "if the offense involved a firearm described in 26 U.S.C. §5845(a) [the National Firearms Act]", the base offense level is 18. Because one of the defendant's offenses involved a National Firearms Act weapon, the Mossberg short-barreled shotgun in Count 11, his base offense level is 18. Although the defendant disagrees with the assignment of the base offense level of 18 to violations of 18 U.S.C. §924(a)(1)(A) even where dangerous and highly regulated National Firearms Act weapons are involved, based upon the plain language of the guidelines, the Sentencing Commission clearly did not believe any

---

[9]This guideline is applied to all firearm offenses.

exception should be made with regards to these violations.  <u>See</u>
<u>United States v. Vega</u>, 392 F.3d 1281, 1282 (11ᵗʰ Cir. 2004)
(upholding sentencing enhancement under U.S.S.G. §2K2.1(5), which
increased base offense level to level 18, where defendant
convicted of providing false information in connection with
purchase of three firearms in violation of 18 U.S.C.
§924(a)(1)(A) and one of the purchases involved a semiautomatic
assault weapon regulated under 18 U.S.C. §921(a)(3)).  In 1991,
based upon the comments of the Firearms and Explosive Materials
Working Group of the United States Sentencing Commission
contained in Exhibit A to the Defendant's Sentencing Memorandum
("Def. Sent. Mem."), the sentencing guidelines were changed to
increase the base offense level for ***any*** firearms offenses to 18
if one or more firearms regulated under the National Firearms
Act, 26 U.S.C. §5845(a) was involved.  Prior to that time, the
increased base offense level of 18 was only applied where the
statute of conviction was 26 U.S.C. §5845(a) (unlawful receipt,
possession, or transportation of National Firearms Act firearms)
or 26 U.S.C. §5861 (unlawful trafficking of a National Firearms
Act weapon).  The Working Group explained that such a change was
necessary because "[o]ffense conduct involving National Firearms
Act (N.F.A.) firearms (including machineguns, destructive
devices, such as pipebombs and grenades, silencers, and sawed off
or short-barrel rifles and shotguns) is generally considered more

serious because such weapons are viewed as more dangerous than other firearms." Def. Sent. Memo, Ex. A at 13.

The Sentencing Commission does allow for some limited decreases and increases to the base offense level of firearm offenses in U.S.S.G. §2K2.1(b), entitled Specific Offense Characteristics.  Under §2k2.1(b)(1), if the offense involved the unlawful acquisition of 8-24 firearms, the base offense is increased by 4 levels.  See also U.S.S.G. §2k2.1 n.5. Accordingly, the defendant's total offense level is increased to level 22.

Under §2k2.1(b)(2), the Sentencing Commission provides an exception to defendants whose offense did **not** involve, among other things, a firearm described in the National Firearms Act, including the short-barreled shotgun at issue here, which would allow the base offense level to be decreased to 6 if the defendant "possessed all ammunition and firearms solely for lawful sporting purposes or collection and did not unlawfully discharge or otherwise lawfully such firearms or ammunition."  By the express terms of this "sporting exception", it does not apply here and the defendant does not qualify for a reduction of his base offense level to 6.

Lastly, the defendant attempts to argue that his conduct is "unusual" and did not involve the "avoidance of state, local, or other federal firearms law" warranting a reduction of his base

11

offense level to level 6 under 2K2.1(a)(7).  As explained further
in Section II, the harm Congress intended to address with 18
U.S.C. §924(a)(1)(A) was the making of false statements relating
to the sale of firearms, including information regarding the
"name, age, and place of residence" of any firearms purchaser.
18 U.S.C. §924(a)(1)(A); 18 U.S.C. §923(g)(1)(A); 18 U.S.C.
§922(b)(5); 18 U.S.C. §922(s)(3); <u>see</u> <u>United States v. Nelson</u>,
221 F.3d 1206, 1209 (11th Cir. 2000).  Consequently, the
defendant's conduct is not unusual but rather is precisely the
harm Congress intended to reach by Section 924(a)(1)(A).
Moreover, the defendant's conduct also involved the violation of
state and local law.  For each firearms purchase, he used a false
address on the state form, form FA-10, completed at the same time
as the firearms purchase and he also failed to maintain an
accurate address with the Worcester Police Department, the agency
which approved his license to carry firearms.

## II.  NO DOWNWARD DEPARTURES UNDER THE GUIDELINES ARE WARRANTED IN THIS CASE.

The defendant is not entitled to a downward departure on any
of the four grounds stated in his sentencing memoranda: (1)
conduct outside of the heartland of misconduct covered by
U.S.S.G. §2k2.1; (2) selective prosecution; (3) extraordinary
family circumstances; and (4) his actual conduct did not cause or
threaten the harm or evil sought to be prevented by the statute
proscribing the offense at issue under U.S.S.G. §5k2.11.  Nor is

he entitled to a downward departure based upon a combination of these factors under U.S.S.G. §5K2.0.

**(1)  Defendant's Conduct not Outside Heartland.**

Each guideline carves out a "'heartland,' a set of typical cases embodying the conduct that each guideline describes. U.S.S.G. §1A1.1 n.4(b).  Under U.S.S.G. §5K2.0(a)(1) and 18 U.S.C. §3553(b), a court may deviate from the sentencing guideline range

> if the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

Not every aggravating or mitigating circumstance, however, will suffice to remove a case from the heartland.  See <u>United State v. Vazquez</u>, 279 F.3d 77, 80 (1st Cir. 2002); <u>United States v. Clase-Espinal</u>, 115 F.3d 1054, 1057 (1st Cir. 1997).  The defendant erroneously argues that the defendant's "de minimis conduct" of lying on an ATF Form 4473 about his residence address is outside the heartland covered by U.S.S.G. §2K2.1.  The defendant was convicted of violating 18 U.S.C. §924(a)(1)(A).  Congress intended this statute to proscribe precisely this case.  <u>See</u> 18 U.S.C. §924(a)(1)(A) (criminalizing the making of any false statement with respect to the sales of firearms).  Similarly, the Sentencing Guidelines explicitly provide that §2K2 applies to violations of 18 U.S.C. §924(a), including violations of 18

13

U.S.C. §924(a)(1)(A).  See App. A to U.S.S.G.  Consequently,
there is nothing atypical about the circumstances of this case
that would "take it out of the 'heartland' for which the
applicable guideline was designed.'" United States v. Bogdan, 284
F.3d 324, 327 (1st Cir. 2002).  Were the Court to accept that the
defendant's false statements are outside the §924(a)(1)(A)
heartland, there would be nothing left of that heartland.

The defendant has also argued that the disparity in
sentences imposed on other defendants in this district convicted
under 18 U.S.C. §922(a)(6) compared to the sentence the defendant
would likely receive under the advisory guidelines, without any
departures, provides further evidence that the defendant's
conduct is outside the heartland and justifies a sentence of time
served.  This argument fails to include any factual basis from
which the Court can evaluate these disparities.  For instance,
the defendant has not indicated whether any of the defendants he
seeks to compare himself committed offenses involved National
Firearms Act weapons; whether any of the defendants pled guilty
or provided substantial assistance to the government; whether any
of the defendants were repeat offenders; and on what basis, the
judges departed under the guidelines.  Similarly, the defendants'
attempt to argue he is entitled to a substantial downward
departure based upon a description of three other defendants who
received substantial downward departures from other judges in

14

this district and whose conduct was allegedly more egregious than the defendants lacks sufficient factual support to assist the Court in a performing a similarity analysis.[10]  What is clear from the defendants description of these other three defendants is that no district court judge in Massachusetts has given a departure as large as that requested by Lewis.  This Court should thus decline to consider these arguments as a basis for departure.  See United States v. Jimenez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (proponent of a sentencing factor or basis of departure is required to provide factual basis for it; without such information, Court may decline to take such requested grounds into account).

**(2)  Defendant not Selectively Prosecuted for Improper Reason; Motives for Bringing Federal Prosecution not Relevant to Sentencing Inquiry.**

In his sentencing memorandum, the defendant has chosen to re-litigate his motion to dismiss on the grounds of selective prosecution.  He again contends that he was selected for prosecution based upon an improper reason and this factor should be considered as a basis for departing below the sentencing guidelines.  As this Court has previously concluded, the

---

[10]Based upon the little information submitted to the Court, at least one defendant's conduct appears far less egregious than that committed by Lewis.  According to the defendant's Sentencing Memorandum, defendant Vito Resto received a sentence of 24 months imprisonment for merely renting weapons and ammunition on two occasions.

government chose to prosecute the defendant for legitimate
purposes.  The reasons the government chose to prosecute the
defendant, however, are not a basis for departure nor should they
be considered by the Court in determining an appropriate
sentence.  See United States v. Snyder, 235 F.3d 42, 51 (1st Cir.
2000) ("Snyder III") (evaluation of prosecutorial motives for
bringing a federal prosecution, including sentencing disparity
under federal and state law, not relevant to sentencing inquiry
and not a basis for a downward departure); see also United States
v. Snyder, 136 F.3d 65, 70 (1st Cir. 1998) ("Snyder II").

    The government chose not to pursue a terrorism enhancement
in this case pursuant to U.S.S.G. §3A1.4.  As a result, it did
not include in its statement of offense and relevant conduct any
description of the terrorism related activities contained in the
government's pleadings filed in opposition to Defendant's Motion
to Dismiss.  The defendant's broadly misconstrues this omission
of even a "whisper" of the government's contentions that the
defendant was possibly involved in terrorist activities and
represented a national security risk from the Presentence Report
as meaning that the government has abandoned its original
position.  That is not the case.

    As this Court concluded in ruling upon the Defendant's
Motion to Dismiss for selective prosecution, "there is
considerable evidence that the defendant poses a substantial

danger of violence and a possible connection to terrorist
activities." See Memorandum and Order on Defendant's Motion to
Dismiss and For Further Discovery issued in United States v.
Lewis, No. 05-40001, slip op. at 11 (D. Mass. filed May 11,
2006). This evidence, which was based upon interviews of four
separate, unrelated witnesses between 2003 and 2004 and
information obtained from the Diplomatic Security Service,
established that the defendant: had become more extremist and
anti-American in the past several years; had expressed his intent
to die while engaging in a jihad (holy war) in order to get to
heaven; had traveled to Somalia or Syria for a month in the
Spring of 2003; had expressed an interest in moving to the Middle
East; had begun using the name "Shaheed", an Arabic word meaning
"martyr" as his first name; while armed at the firearm range, had
threatened a firearms instructor, who had expressed concern about
his shooting practices, with physical violence (i.e., he (the
firearm's instructor) should "watch his back" and he (the
firearm's instructor) "didn't know who he was fucking with"); had
reported his passport was lost and obtained a new one in 2001 --
according to the Diplomatic Service Service, such a tactic is
used to hide suspicious travel (e.g., travel to countries linked
to terrorism related activities); and immediately prior to his
arrest, had expressed an interest in moving to country where
there was a "war" or "crisis." Id. 4-5, 11-12.

17

Additionally, the defendant, a large firearms purchaser, with little to no financial resources, was prosecuted because he fraudulently obtained 16 firearms.  Indeed, he was convicted of making false statements during the acquisition of all sixteen firearms, including a Mossberg, short-barreled easily-concealable shotgun, which is regulated under the National Firearms Act. There was nothing improper in choosing to prosecute the defendant.

Contrary to the defendant's repeated assertions that the government's motives in bringing this prosecution provide a basis for a departure, the First Circuit Court of Appeals has explicitly concluded that the reasons the government chooses to prosecute an individual are not relevant to the sentencing inquiry.  Snyder II, 136 F.3d at 70 (sentencing before Judge Harrington vacated and remanded).  In Snyder III, the defendant, an armed career criminal, was convicted of being a felon in possession of a firearm and ammunition.  235 F.3d at 44.  After Judge Harrington recused himself *sua sponte*, Snyder sought a downward departure from Judge Young on the grounds that there was no compelling federal interest to justify his prosecution under federal, rather than state, law.  Judge Young declined to grant Snyder a downward departure on this basis.  Id. at 49.  In upholding Judge Young's refusal to grant Snyder a downward departure at sentencing based upon an evaluation of government's

motives for prosecuting him, the First Circuit stated

> [w]e rejected this very argument in Snyder II: [I]t is
> a bedrock principle of our system of criminal justice
> that a federal judge may not interfere with the
> government's prosecutorial decisions solely to
> vindicate his subjective view of the wisdom of a given
> enforcement strategy.  It follows inexorably that the
> government's lawful selection of Synder for federal
> prosecution has no relevance to the sentencing inquiry.

Snyder III, 235 F.3d at 51 (quoting Snyder II).

**(3)  Defendant's Family Responsibilities not Extraordinary.**

The defendant's family responsibilities do not qualify as
extraordinary warranting a downward departure.  The defendant
contends that defendant's role as a second caretaker, in addition
to his wife, for his four children is irreplacable and his
situation is extraordinary.  As the First Circuit Court of
Appeals has recognized, "[a] defendant's incarceration will
invariably cause hardship to his family."  United States v.
Louis, 300 F.3d 78, 82 (1ˢᵗ Cir. 2002).  Only family
responsibilities that are extraordinary therefore warrant a
departure under the guidelines as falling outside the heartland.
If there is "feasible alternatives of care that are relatively
comparable to what the defendant provides," he is not considered
irreplacable.  United States v. Pereira, 272 F.3d 76, 83 (1ˢᵗ
Cir. 2001).  For instance, in Pereira, the First Circuit noted
that it had previously held that "a felon's parental
responsibility to care for a child was, by itself, neither
atypical nor unusual, even when both parents faced incarceration"

19

where someone else was able to care for the child while his parents were imprisoned.  Id. at 80-83 ("courts have affirmed departures where evidence established that the care rendered by the defendant was irreplacable."  Uniqueness of defendant's situation does not, however, equate with extraordinariness). Here, the defendant's wife, who worked previously worked as day care worker, can care for their children.  Accordingly, the defendant's family responsibilities do not warrant a downward departure under the guidelines nor should they warrant a downward departure under a Section 3553(a) analysis as discussed in Section III.

**(4)  Defendant's Conduct is Exact Harm Sought to be Addressed by Statute at Issue, 18 U.S.C. §924(a)(1)(A).**

U.S.S.G. §5K2.11 permits a downward departure if the defendant's conduct did "not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue."  The defendant was convicted under 18 U.S.C. §924(a)(1)(A), not the National Firearms Act, 26 U.S.C. §5861. Accordingly, for purposes of analyzing whether the defendant is entitled to a downward departure under §5K2.11, the Court needs only determine the harm or evil Congress sought to prevent by 18 U.S.C. §924(a)(1)(A) and not the National Firearms Act as suggested by the defendant.  Section 924(a)(1)(A) prohibits the making of

any false statement or representation with respect to

20

> information required by this chapter to be kept in the
> records of a person licensed under this chapter or in
> applying for any license or exemption or relief from
> disability under the provisions of this chapter

Clearly, a firearm purchaser's false statements on an ATF Form
4473 regarding the purchase of a firearm would fall within harm
intended to be criminalized by Section 924(a)(1)(A).  The
defendant's conduct therefore falls squarely within the harm or
evil addressed by Section 924(a)(1)(A) and he is not entitled to
a downward departure under U.S.S.G. §5K2.11.  See United States
v. Riley, 376 F.3d 1160, 1166-68 (D.C. Cir. 2004) (defendant
convicted of being a felon in possession of firearm and
ammunition not entitled to "lesser harm" downward departure
despite his argument that he had no unlawful purpose where
purpose of statute at issue, 18 U.S.C. §922(g) was criminalize
precise behavior committed by defendant).

## III. A SENTENCE OF 41 MONTHS IMPRISONMENT IS REASONABLE BASED UPON THE SENTENCING FACTORS CONTAINED IN 18 U.S.C. §3553(a).

Even under United States v. Booker, 125 U.S. 738 (2005), the
guidelines remain an important consideration in fashioning an
appropriate sentence.  Jimenez-Beltre, 440 F.3d at 518.  The
district court may, however, depart above or below the guideline
range based upon the sentencing factors articulated in 18 U.S.C.
§3553(a) provided its sentence is reasonable.  See United States
v. Smith, 445 F.3d 1, 6 (1st Cir. 2006) ("a sentence less than
half the minimum range [under the guidelines] appears to us

21

plainly unreasonable.").

The factors contained in Section 3553(a) support the imposition of a sentence of 41 months imprisonment. First, the defendant's repeatedly violated Section 924(a)(1)(A) to, among other reasons, perpetuate a fraud upon the Worcester Housing Authority. Far from being a responsible gun owner as indicated in his pleadings with this Court, three of the 32 firearms he purchased are now missing. Second, a 41 month sentence will reflect the seriousness of the offenses, promote respect for the law, and provide just punishment for the offenses. The defendant lied seventeen times to ATF when purchasing pistols, handguns, assault rifles, and a short-barreled shotgun. Despite the defendant's characterization, these offenses are not merely record keeping violations. They strike at the heart of the gun control laws. A firearms purchaser is required to truthfully execute certain forms to purchase a firearm. Third, a 41 month sentence will deter the defendant and other individuals, from committing similar conduct in the future.

**CONCLUSION**

For the foregoing reasons, the government respectfully requests this Court impose a reasonable sentence of (1) imprisonment of 41 months, (2) three years supervised release, and (3) a mandatory special assessment of $1500.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ B. Stephanie Siegmann
B. STEPHANIE SIEGMANN
Assistant U.S. Attorney

Certificate of Service

I do hereby certify that a copy of the foregoing memorandum was served upon Mr. Timothy Watkins by electronic notice on this 4th day of January 2007.

/s/ B. Stephanie Siegmann
B. Stephanie Siegmann
Assistant U.S. Attorney